UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| RENEE CLIBURN, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. |
| | § | |
| CUSA KBC, LLC, and | § | SA-07-CV-0620 NN |
| LIVA AND NASSETTA, LLC, and | § | |
| JEFFREY S. LIVA, M.D., | § | |
| | § | |
| Defendants. | § | |

## ORDER CONCERNING MOTION TO DISMISS

This order addresses the motion to dismiss[1] filed by defendants Liva and Nassetta, LLC, and Dr. Jeffrey S. Liva (together Liva-Nassetta). After considering the motion, I grant the motion and dismiss all claims against Liva-Nassetta.

This lawsuit stems from plaintiff Renee Cliburn's termination as a bus driver for defendant CUSA KBC, LLC, known as Kerrville Bus Company. Kerrville Bus Company terminated Cliburn after Liva-Nassetta advised the company that Cliburn had falsified her return-to-duty form and her Department of Transportation (DOT) medical exam form. Under the DOT regulations for drivers, "[a] person shall not drive a commercial motor vehicle unless he/she is physically qualified to do so and . . . has on his/her person the original, or a photographic copy, of a medical examiner's certificate that he/she is physically qualified to drive a commercial motor vehicle."[2] Kerrville Bus Company contracted with Liva-Nassetta to provide and maintain the DOT medical examiner's certificates for its bus drivers. Cliburn alleges that Liva-Nassetta: (1) violated the Americans with

---

[1] *See* docket entry # 14.

[2] 49 C.F.R. § 391.41(a) (2007).

Disabilities Act by treating her as disabled, (2) violated section 21.002 of the Texas Labor Code by treating her as disabled, (3) invaded her privacy by illegally obtaining her medical records, and (4) tortiously interfered with her employment contract with Kerrville Bus Company.  Liva-Nassetta has moved for dismissal of each of these claims under Rule 12(b)(6) of the Federal Rules of Procedure.

## Standard for a Motion to Dismiss

A defendant in a civil action may move to dismiss under Rule 12(b)(6) for "failure to state a claim upon which relief may be granted."[3]

> To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."[4]

## Cliburn's Employment Discrimination Claims

Cliburn alleges that Liva-Nassetta treated her as if she were disabled.  Cliburn's allegations about employment discrimination in regard to Liva-Nassetta aren't completely clear, but she seems to allege that Liva-Nassetta discriminated against her by invalidating her DOT medical certificate rather than recommending that Kerrville Bus Company offer her a reasonable accommodation.[5]  Although Cliburn does not identify a medical condition that serves as the basis of a perceived disability, her complaint indicates that Cliburn has a medical condition related to substance abuse.[6]  Cliburn alleges that invalidating the medical certificate constitutes employment discrimination

---

[3] FED. R. CIV. P. 12(b)(6).

[4] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007)).

[5] *See* docket entry # 1, exh. A, p. 6 of Cliburn's original petition.

[6] *See id.* at pp. 4-5.

based on disability under the Texas Labor Code and the ADA.  Liva-Nassetta asks for dismissal of these claims on grounds that it is not Cliburn's employer.

The ADA prohibits a covered entity from "discriminat[ing] against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."[7]  The ADA defines "covered entity" as "an employer, employment agency, labor organization, or joint labor-management committee."[8]  Cliburn does not allege that Liva-Nassetta is an employer, employment agency, labor organization, or joint labor-management committee.  Instead, she alleges that she "was an employee of Defendant CUSA KBC, LLC d/b/a Coach America and d/b/a Kerrville Bus Co."[9]  Rather than alleging that Liva-Nassetta terminated her, Cliburn alleges that Kerrville Bus Company terminated her.[10]  Cliburn's allegations make it clear that Kerrville Bus Company, not Liva-Nassette, was Cliburn's employer.  Cliburn does not address this argument in her response to the motion to dismiss except to state that the ADA prohibits employers from "participating in a contractual or other arrangement or relationship that has the effect of subjecting a covered entity's qualified applicant or employee with a disability to the discrimination prohibited by [the ADA] . . . ."[11]  While that may be true,[12] Cliburn has not alleged that Liva-Nassette participated in a contractual or

---

[7] 42 U.S.C. § 12112(a).

[8] 42 U.S.C. § 12111(2).

[9] *See* docket entry # 1, exh A, ¶ 6 of Cliburn's original petition.

[10] *See id.* at ¶ 27.

[11] Docket entry # 26, ¶ 13.

[12] 42 U.S.C. § 12112(b)(2).

other arrangement or relationship that had the effect of subjecting her to discrimination. Instead, she complains that Liva-Nassette invalidated her DOT medical certificate[13] and that it illegally obtained her medical records from Laurel Ridge Treatment Center.[14] Even if true, Cliburn's allegations are insufficient to raise a right to relief above the speculative level because Cliburn did not allege that Liva-Nassette is an employer. Cliburn has failed to allege a claim upon which relief may be granted. Liva-Nassette is entitled to dismissal of Cliburn's claim under the ADA.

Like the ADA, section 21.051 of the Texas Labor Code prohibits an employer from discriminating on the basis of disability.[15] Section 21.051 defines employer as follows:

> (A) a person who is engaged in an industry affecting commerce and who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year;
>
> (B) an agent of a person described by Paragraph (A);
>
> (C) an individual elected to public office in this state or a political subdivision of this state; or

---

[13] *See* docket entry #1, exh. A., ¶ 30 of Cliburn's original petition.

[14] *See id.* at ¶¶ 42.

[15] Section 21.051 provides as follows:

> An employer commits an unlawful employment practice if because of . . . disability . . . the employer:
>
> (1) fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment; or
>
> (2) limits, segregates, or classifies an employee or applicant for employment in a manner that would deprive or tend to deprive an individual of any employment opportunity or adversely affect in any other manner the status of an employee.

Tex. Labor Code Ann. § 21.051 (Vernon 2006).

> (D) a county, municipality, state agency, or state instrumentality, regardless of the number of individuals employed.[16]

Cliburn does not allege that Liva-Nassette is a person engaged in an industry affecting commerce and who has 15 or more employees; an agent of a person engaged in an industry affecting commerce and who has 15 or more employees; an elected official; or a county, municipality, state agency, or state instrumentality.  Instead, she characterizes Liva-Nassette as Kerrville's Bus Company's medical director.[17]  As with her claims under the ADA, Cliburn alleges that she was employed by Kerrville Bus Company, not Liva-Nassette.  Cliburn addressed this argument in her response to the motion to dismiss to the same extent that she addressed Liva-Nassette's argument about her ADA claim–that is, only to state that the ADA prohibits employers from "participating in a contractual or other arrangement or relationship that has the effect of subjecting a covered entity's qualified applicant or employee with a disability to the discrimination prohibited by [the ADA] . . . ."[18]  Cliburn has not alleged that Liva-Nassette participated in a contractual or other arrangement or relationship that had the effect of subjecting her to discrimination.  Even if true, Cliburn's allegations are insufficient to raise a right to relief above the speculative level because Cliburn did not allege that Liva-Nassette is an employer.  Cliburn failed to allege a claim upon which relief may be granted.  Liva-Nassette is entitled to dismissal of Cliburn's claim under section 21.051 of the Texas Labor Code.

### Cliburn's Invasion of Privacy Claim

Cliburn alleges that Liva-Nassette invaded her privacy by requesting her medical records

---

[16]Tex. Labor Code Ann. § 21.002(8) (Vernon 2006).

[17]*See* docket entry # 1, exh. A, ¶ 30 of Cliburn's original petition.

[18]Docket entry # 26, ¶ 13.

from Laurel Ridge Treatment Center.  She complains that Liva-Nassette, without written authorization,"[19] illegally ordered and obtained her medical records.[20]  Cliburn maintains that the request for the records constitutes an intentional intrusion into her private affairs and that the request was beyond the scope of Liva-Nassette's duties and rights as a medical director for Kerrville Bus Company.[21]  Liva-Nassette asks for dismissal of this claim, in part, on grounds that requesting medical records would not be highly offensive to a reasonable person.

Under Texas law, a plaintiff who alleges an invasion of privacy must prove: "(1) an intentional intrusion, physically or otherwise, upon another's solitude, seclusion, or private affairs or concerns, which (2) would be highly offensive to a reasonable person."[22]  Texas courts require that such intrusions be unreasonable, unjustified, or unwarranted.[23]  Here, Cliburn's complaint alleges the following: Cliburn voluntarily checked into Laurel Ridge Treatment Center for an undisclosed medical condition on December 13, 2006.[24]  Cliburn requested and obtained a leave of absence from Kerrville Bus Company.[25]  Cliburn was released from Laurel Ridge Treatment Center on December 17, 2006.[26]  She returned to work on December 18, 2006, turned in her doctor's

---

[19]*See* docket entry # 1, exh A, ¶ 42 of Cliburn's original petition.

[20]*See id.* at ¶ 19.

[21]*See id.* at ¶ 42.

[22]*Valenzuela v. Aquino*, 853 S.W.2d 512, 513 (Tex. 1993).

[23]*See Polansky v. Southwest Airlines*, 75 S.W.3d 99, 105 (Tex. App.—San Antonio 2002, no pet.).

[24]*See* docket entry # 1, exh A, ¶ 7 of Cliburn's original petition.

[25]*Id.*

[26]*Id.* at ¶ 8.

return-to-work form, and filled out a back-to-work questionnaire.[27] Kerrville Bus Company dispatched Cliburn to drive on December 20, 2006. Kerrville Bus Company dispatched Cliburn to drive again on December 21, 2006, but pulled her out of service on December 22, 2006 because Liva-Nassette required a new medical exam for DOT certification.[28] Cliburn had a new medical exam at the Texas Med Clinic and turned in an approved DOT certification.[29] The certification approved Cliburn's use of Paxil.[30] Paxil is the brand name of a drug containing paroxetine hydrochloride which is used as an antidepressant.[31] Cliburn provided unspecified paperwork from Liva-Nassette to Kerrville Bus Company.[32] Kerrville Bus Company informed Cliburn that she could not return to work until Liva-Nassette approved the paperwork.[33] On December 28, 2006, Liva-Nassette told Cliburn that it needed a copy of Cliburn's medical records in order to certify that Cliburn was not suicidal or a danger to passengers.[34] Cliburn called Laurel Ridge Treatment Center and told it that she would not give Liva-Nassette permission to access her records.[35] On December 29, 2006, Liva-Nassette called Cliburn and directed her to attend substance abuse

---

[27] *Id.* at ¶ 9.

[28] *Id.* at ¶¶ 10-11.

[29] *Id.* at ¶ 12.

[30] *Id.*

[31] J.E. SCHMIDT, M.D., 4-P ATTORNEY DICTIONARY OF MED. 2047 (Matthew Bender 2005).

[32] *See* docket entry # 1, exh A, ¶ 13 of Cliburn's original petition.

[33] *Id.* at ¶ 14.

[34] *Id.* at ¶ 15.

[35] *Id.* at ¶ 16.

counseling before returning to work.[36]  Liva-Nassette told Cliburn that it had a copy of Cliburn's medical records.[37]  If true, these allegations establish that Liva-Nassette sought out Cliburn's medical records to determine whether to certify Cliburn for work as a bus driver.

Cliburn did not directly address Liva-Nassette's argument that a reasonable person would not consider seeking a driver's medical records in order to ascertain the driver's qualifications for DOT certification as highly offensive.  Instead, she argued that Liva-Nassette approached the court with unclean hands because it had illegally obtained her medical records.  Cliburn seems to argue that Liva-Nassette acted illegally because she told Laurel Ridge Treatment Center not to release her medical records.  She does not allege, however, that she told Liva-Nassette that it could not access her medical records.  Instead, she insists that Liva-Nassette acted outside the scope of its duties and rights as Kerrville Bus Company's medical director by seeking her medical records rather than accepting Texas Med Clinic's certification.

Cliburn attached the medical examiner's certificate and the medical examination report to her response to the motion to dismiss.[38]  The medical examination report—dated December 22, 2006—indicates that Cliburn suffers from obsessive compulsive disorder[39] and that she was hospitalized in 2006 at Laurel Ridge Hospital.  The medical examiner reported that Cliburn had a note from Michael Hawkins, a nurse practitioner at Brooks Army Medical Center, dated October

---

[36]*Id*. at ¶ 21.

[37]*Id*.

[38]*See* docket entry # 26, exh. C.

[39]"Obsessive-Compulsive Disorder, OCD, is an anxiety disorder and is characterized by recurrent, unwanted thoughts (obsessions) and/or repetitive behaviors (compulsions)."  Nat'l Inst. of Mental Health, *available at* http://www.nimh.nih.gov (click on Health & Outreach and then Obsessive-Compulsive Disorder).

15, 2006, clearing her to drive under DOT.  The medical examiner also reported that Cliburn was taking Paxil.  The medical examiner indicated that Cliburn "[m]eets standards, but periodic evaluation is required."[40]  Cliburn also attached a letter from Liva-Nassette to Kerrville Bus Company, dated January 19, 2007.[41]  In the letter, Liva-Nassette indicated that its review of the medical examination report "prompted a request for additional medical records."[42]  The letter further indicated that Liva-Nassette advised Cliburn that it must have a copy of her hospital admission to determine whether she met DOT medical requirements.

Under these circumstances, requesting the records is not unreasonable, unjustified, or unwarranted.  A reasonable person would not consider Liva-Nassette's efforts to obtain a driver's medical records as highly offensive because Liva-Nassette sought the medical records to ascertain whether the driver met DOT standards.  Without conduct which "would be highly offensive to a reasonable person," Cliburn's allegations are insufficient to raise a right to relief above the speculative level.  Cliburn has failed to state a claim upon which relief may be granted.  Liva-Nassette is entitled to dismissal of this claim.  Because I relied on the documents attached to Cliburn's response in reaching this determination, I will treat Liva-Nassette's motion to dismiss Cliburn's claim for invasion of privacy as a motion for summary judgment under Rule 56.[43]

### Cliburn's Claim for Tortious Interference with Contract

---

[40]*See* docket entry # 26, exh. C.

[41]*See* docket entry # 26, exh. A.

[42]*Id.*

[43]*See* Fed. R. Civ. P. 12(b) ("If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 . . . .").

Liva-Nassette also alleges that Liva-Nassette tortiously interfered with her employment contract with Kerrville Bus Company.[44] Cliburn alleges that Liva-Nassette intentionally interfered with the contract by invalidating her DOT medical certification, causing her to be fired as a bus driver.[45] Liva-Nassette asks for dismissal of this claim because Cliburn has not alleged that Liva-Nassette instructed Kerrville Bus Company to fire her or that it intentionally induced Kerrville Bus Company to fire her.

"The elements of a [Texas] cause of action for tortious interference with an existing contract are (1) the existence of a contract subject to interference, (2) a willful and intentional act of interference, (3) such act was a proximate cause of damage and (4) actual damage or loss occurred."[46] Here, Cliburn alleges that Liva-Nassette "willfully and intentionally interfered with [her employment contract with Kerrville Bus Company] by invalidating her DOT medical certification."[47] Cliburn does not allege that Liva-Nassette instructed Kerrville Bus Company to fire her, that Liva-Nassette intentionally induced Kerrville Bus Company to fire her, or that Liva-Nassette invalidated the medical certification in order to get her fired. As the agency responsible for reviewing the medical certifications for Kerrville Bus Company's drivers, Liva-Nassette was bound to invalidate a medical examiner's certification if it determined a driver did not meet the DOT's requirements.[48] Cliburn's factual allegations are insufficient to raise a right to relief above

---

[44]*See* docket entry # 1, exh A, ¶ 46 of Cliburn's original petition.

[45]*See id.* at ¶ 46.

[46]*Browning-Ferris v. Reyna*, 865 S.W.2d 925, 926 (Tex. 1993).

[47]*See* docket entry #1, exh. A, ¶ 47.

[48]*See* 49 C.F.R. § 391.43(g) ("<u>If</u> the medical examiner finds that the person he/she examined is physically qualified to drive a commercial motor vehicle . . ., the medical examiner shall complete a

the speculative level because the only willful and intentional act that Cliburn alleged is an act pursuant to a regulatory duty.  Cliburn has failed to state a claim upon which relief can be granted.  Liva-Nassette is entitled to dismissal of Cliburn's tortious interference claim.

### Liva-Nassette's Request for Attorney's Fees

Liva-Nassette also asks for attorney's fees.  Liva-Nassette maintains that an award against Cliburn is appropriate as a sanction for filing frivolous claims.  Liva-Nassette explained that although it had sent a substantially identical motion to Cliburn and asked her to voluntarily withdraw his claims, Cliburn rejected the request.  Liva-Nassette asks for sanctions under Rule 11 of the Federal Rule of Civil Procedure, the Supreme Court's holding in *Christiansburg Garment Company v. Equal Employment Opportunity Commission*, 28 U.S.C. § 1927, and the court's inherent power.

Under Rule 11, an attorney or an unrepresented party has an obligation to sign and file only pleadings that he believes contains allegations and other factual contentions that "have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery. . . ."[49]  "If, after notice and a reasonable opportunity to respond, the court determines that [this requirement] has been violated, the court may . . . impose an appropriate sanction upon the attorneys, law firms, or parties that have violated [the requirement] or are responsible for the violation."[50]  Here, an award of attorney's fees is not appropriate under Rule 11 because the rule applies to attorneys and unrepresented parties, because

---

certificate in the form prescribed in paragraph (h) of this section and furnish one copy to the person who was examined and one copy to the motor carrier that employs him/her.") (underlining added).

[49] FED. R. CIV. P. 11(b).

[50] FED. R. CIV. P. 11(c).

11

Cliburn is not an attorney but represented by an attorney, and because Liva-Nassette did not ask for a sanction against Cliburn's attorney.

In *Christiansburg Garment Company v. Equal Employment Opportunity Commission*, the Supreme Court considered the standard a district court should use in deciding whether to award attorney's fees to a successful defendant in a Title VII action under 42 U.S.C. § 2000e-5(k).[51] The Court determined that a prevailing defendant is entitled to attorney's fees if the plaintiff's "claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so."[52] Here, an award is not appropriate under the decision because Cliburn did not bring a claim under 42 U.S.C. § 2000e-5(k).

Under 28 U.S.C.§ 1927, the court may sanction "[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously . . . [with] attorneys' fees reasonably incurred because of such conduct."[53] Sanctions against Cliburn are not appropriate under 28 U.S.C.§ 1927 because Cliburn is not an "attorney or other person admitted to conduct cases in any court of the United States or any Territory."[54]

"The inherent powers of federal courts are those which 'are necessary to the exercise of all others.'"[55] Although a federal court's inherent authority to sanction for bad-faith litigation is not

---

[51]*Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 417 (1978).

[52]*Christiansburg Garment Co.*, 434 U.S. at 422.

[53]28 U.S.C. § 1927.

[54]*Id.*

[55]*Roadway Express v. Piper*, 447 U.S. 752, 764 (1980) (internal citation omitted).

displaced by statutes and rules regarding sanctions,[56] a court considering sanctions "ordinarily should rely on the [r]ules rather than the inherent power."[57] Here, the ADA specifically provides for an award of attorney's fees for a prevailing party.[58] Liva-Nassette, however, has not requested an award under the statute. But because that statute exists, it is appropriate for the court to rely on that statute rather than the court's inherent power in awarding attorney's fees. Liva-Nassette is not entitled to an award under the authority presented in its motion.

### Court's Orders

For the reasons discussed in this order, I GRANT Liva-Nassette's motion to dismiss (docket entry# 14) and DISMISS Cliburn's claims against Liva-Nassette. I need not reach Cliburn's request for additional time for discovery because my decision is based on Cliburn's allegations.

**SIGNED** on November 19, 2007.

*[signature: Nancy Stein Nowak]*

NANCY STEIN NOWAK
UNITED STATES MAGISTRATE JUDGE

---

[56] *See Chambers v. NASCO*, 501 U.S. 32, 46 (1991).

[57] *Chambers*, 501 U.S. at 50.

[58] *See* 42 U.S.C. § 12205 ("In any action or administrative proceeding commenced pursuant to this chapter, the court or agency, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee, including litigation expenses, and costs . . . .").